492 So.2d 90 (1986)
John RABAI and Elizabeth Rabai
v.
FIRST NATIONAL BANK OF GONZALES.
No. 85 CA 0401.
Court of Appeal of Louisiana, First Circuit.
June 24, 1986.
Rehearing Denied August 20, 1986.
Writ Denied November 7, 1986.
*91 James E. Marchand, Donaldsonville, for John Rabai and Elizabeth Rabai plaintiffs-appellants.
Richard Willis, Gonzales, for First Nat. Bank of Gonzales, La. defendant-appellee.
Dale Maas, Baton Rouge, for Kel-Leigh Co. defendant-appellee.
Guy Holdridge, Gonzales, for City of Gonzales, defendant-appellee.
Gordon R. Crawford, Gonzales, for Ascension Parish Police Jury defendant-appellee.
Glen T. Cambre, Gonzales, for Bruce Hunt and A-1 Contracting Co. of Louisiana, Inc. defendants-appellees.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Plaintiffs, John Rabai and Elizabeth Rabai, husband and wife, filed the present suit as an action in redhibition and in the alternative in quanti minoris alleging that the house and lot that they purchased from defendant, First National Bank of Gonzales, situated in Autumn View Subdivision, Prairieville, Louisiana, were prone to flood.
The house and lot were described in an advertisement published in the Baton Rouge newspaper as being "high and dry". The advertisement was published by Kel-Leigh Home Builders and Real Estate (Kel-Leigh), which served as real estate agent for First National Bank of Gonzales. Upon being sued by the Rabais, First National Bank third partied Kel-Leigh. Kel-Leigh third partied the City of Gonzales. The City of Gonzales was subsequently dismissed with prejudice on motion of Kel-Leigh. The Rabais filed an amended petition against Kel-Leigh Realty Company (sic), alleged to be a domestic corporation, *92 for negligent mispresentation of the fact that the property would not flood. Kel-Leigh thereupon third partied the Ascension Parish Police Jury, and subsequently also third partied Bruce Hunt, alleged developer of Autumn View Subdivision, and later A-1 Contracting Company of Louisiana, Inc., also an alleged developer of Autumn View. The Rabais then filed a second amended petition naming Kelline Smith, d/b/a Kel-Leigh Home Builders and Real Estate, a sole proprietorship, and Richard Smith, who completed construction of the house, as defendants. Kelline Smith d/b/a Kel-Leigh Home Builders and Real Estate and Richard Smith third partied First National Bank of Gonzales, the Ascension Parish Police Jury, Bruce Hunt, and A-1 Contracting Company of Louisiana, Inc. Thereafter, by granting of its Motion for Summary Judgment, the Ascension Parish Police Jury was dismissed as a third party defendant under Kelline Smith's and Richard Smith's third party demand. All other parties went to trial.
The trial court dismissed plaintiffs' principal demand, holding plaintiffs had not established that the property was susceptible to flooding. Consequently, all third party demands were likewise dismissed. We reverse, as we find as a matter of law the trial court committed reversible error in concluding under the facts presented that the property was not susceptible to flooding.
In brief, the plaintiffs, John and Elizabeth Rabai, confine their demand to a demand in quanti minoris.
The facts basically show that the house and lot (Lot 13-B) were purchased by plaintiffs from First National Bank of Gonzales on March 18, 1982, for a purchase price of $69,900.00. First National Bank of Gonzales had obtained the property by foreclosure on a mortgage of the original builder, who was building several houses in Autumn View. Richard Smith, husband of Kelline Smith, completed the construction of the house and other houses seized by First National Bank by agreement with First National Bank. Kelline Smith established Kel-Leigh Home Builders and Real Estate to market these houses, which it did at the request of First National Bank, and Kel-Leigh advertised the houses as being "high and dry" in the Baton Rouge newspaper.
Photographs introduced in evidence show the house to be built upon a slab, very close to the ground, which is level and not at all hilly. The Rabais after moving into the house were forced to sandbag the house twice, once in December, 1982, and once again in April, 1983, to keep it from flooding. Also, before the case came to trial (July 19, 1984) the yard had flooded from six to twelve times to such an extent that rainwater almost entered the house.
If a house or lot is susceptible to flooding, the vendee may bring an action in quanti minoris. The test is not actual flooding, but the proneness of the property to flood. Millspaw v. Knight, 430 So.2d 1207 (La.App. 1st Cir.1983) and the cases cited therein. The trial court found the house and lot were not prone to flood under normal conditions, but rather only under extraordinary conditions, which the trial court found existed during the April, 1983, sandbagging, when there was widespread flooding in Ascension Parish. The trial court applied the proper law in stating that flooding under extraordinary conditions does not form the basis for an action in redhibition or in quanti minoris. Braydon v. Melancon, 462 So.2d 262 (La.App. 1st Cir.1984). However, the facts in the present case indicate the house and lot purchased by the Rabais were prone to flood. The house was built one lot over from a drainage canal which drained the entire Autumn View Subdivision, and which frequently flooded, both from backwater from Bayou Manchac and from rainwater. Lot 13-B, on which the house was constructed, was the lowest lot in the subdivision, and constituted a natural drain for the other lots in the subdivision. A flood map introduced in evidence showed Lot 13-B as being in Flood Zone C, which, although not the lowest flood zone, the lowest flood zone being Zone A, was nonetheless *93 susceptible to flooding. Furthermore, a proffered map showed Lot 13-B as being in Flood Zone A, which is still lower. In any event, the house and lot were not "high and dry", as the advertisement in the Baton Rouge newspaper which caught the Rabais' attention indicated them to be. Photographs show the land in the subdivision to be almost flat, and the house to be barely above the level of the surrounding land, which would make the house easily susceptible to flooding, especially given the susceptibility of the lot to flooding.
We therefore hold that the present suit constitutes a proper basis for recovery by the Rabais in quanti minoris. A real estate appraiser qualified as an expert, Caleb Mire, testified that the house and lot suffered a 15% diminution in value as a result of its proneness to flood. The house and lot sold for $69,900.00. As the court is given broad discretion in awarding a partial reduction in the purchase price in an action in quanti minoris, see, Millspaw, supra, we hold that the purchase price should be reduced by $69,900.00 X 15%, or $10,485.00.
Plaintiffs also seek damages and attorney's fees, under the theory that the bank was "manufacturer" of the house, and hence bad faith is presumed, citing Cox v. Moore, 367 So.2d 424 (La.App. 2nd Cir. 1979), writ denied, 369 So.2d 1364 (La. 1979). However, Cox dealt with a buildervendor. It does not apply to a bank which forecloses upon a lot on which a house is under construction, has the house completed, and then sells the house and lot. Clearly the bank in such a case is not a "manufacturer". Hence, bad faith must be proved. Millspaw, supra. As bad faith on the part of the First National Bank of Gonzales was not established, plaintiffs are not entitled to damages and attorney's fees.
Plaintiffs also seek to recover from Kelline Smith d/b/a Kel-Leigh Home Builders and Real Estate for negligent misrepresentation in describing the house and lot as being "high and dry". For plaintiffs to recover for negligent misrepresentation, they must prove that there was a duty on the part of defendant realtor to supply correct information, a breach of that duty and the breach must have caused plaintiffs' damage. Braydon, supra, at 263. In the present case, Kel-Leigh clearly owed a duty not to misrepresent the flood potential of the house and lot subsequently sold by First National Bank to the Rabais. They knew or should have known by inspection of the flood zone map that Lot 13-B lay at least in Flood Zone C, which, while not in the lower zone, Flood Zone A, was certainly not "high and dry", as an inspection of the lot in question would have demonstrated to Kel-Leigh. As a result of Kel-Leigh's negligent misrepresentation, the Rabais suffered diminution in value of their house and lot. Hence, we hold Kelline Smith d/b/a Kel-Leigh and the First National Bank of Gonzales liable, in solido, to the Rabais for 15% of the purchase price, or $10,485.00, as each is liable for the whole performance, and the performance rendered by one will relieve the other of liability toward the plaintiffs-obligees. LSA-C.C. art. 1794. A solidary obligation, we note, may derive from different sources as to each of the solidary obligors, the First National Bank of Gonzales being liable in quanti minoris and Kel-Leigh being liable for negligent representation. See, LSA-C.C. art. 1797.
None of the third party demands were proven with any degree of precision at trial. Hence, we dismiss all third party demands with the reservation to the solidary obligors of the right to obtain contribution.
The judgment of the trial court is reversed, and judgment rendered in favor of John Rabai and Elizabeth Rabai and against First National Bank of Gonzales and Kelline Smith d/b/a Kel-Leigh Home Builders and Real Estate, in solido, in the full amount of $10,485.00, with legal interest from date of judicial demand and all costs. All other demands are dismissed with reservation of the right of the First National Bank of Gonzales and Kelline Smith d/b/a Kel-Leigh Home Builders and
*94 Real Estate to obtain contribution from each other.
REVERSED AND RENDERED.
SHORTESS, J., concurs.