616 So.2d 1327 (1993)
George C. YARBROUGH, et al., Plaintiffs-Appellants,
v.
The FEDERAL LAND BANK ASSOCIATION OF JACKSON, et al., Defendants-Appellees.
No. 24606-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
*1329 William A. Yarbrough, Vidalia, for plaintiffs-appellants.
Hayes, Harkey, Smith, Cascio & Mullens by Joseph D. Cascio, Jr., Monroe and Fellers, Snider, Blankenship, Bailey & Tippens by Michael R. Ford and Cynthia Hines Majors, Oklahoma City, OK, for defendants-appellees, Federal Land Bank of Jackson in Receivership and Federal Land Bank Assn. of Jackson in Receivership.
W. Brian Babin, Baton Rouge, for defendant-appellee, Warner L. Bruner, Jr.
Before MARVIN, BROWN and STEWART, JJ.
MARVIN, Chief Judge.
In this breach-of-contract action against the Federal Land Bank of Jackson, Miss., now in receivership, and its officers, the widow and succession representative of George Yarbrough, the original plaintiff, appeal judgments that dismissed the action on exceptions. The action against the officers was based on their alleged intentional interference with a provision in a 1985 lease of farmland that gave George Yarbrough the right of first refusal to purchase the farmland from the Bank during the term of the lease.
Appellants were substituted as plaintiffs following Yarbrough's death in 1989 while the action was pending. These plaintiffs joined other defendants, including Walter Bruner, Jr., who was the president of the Bank before and during the 10-month term of the lease.
The judgments sustained Bruner's exceptions of prescription and of no cause of action and granted the Bank's motion for summary judgment.
We affirm the Bank's summary judgment. Federal Sav. and Loan Ins. Corp. v. Locke, 718 F.Supp. 573 (W.D.Tex.1989). We reverse and render judgment overruling Bruner's exceptions.

FACTS
Owing more than $13 million to Federal Land Banks in Jackson, Miss., Alexandria and Rayville, La., in the 1980's, George Yarbrough had secured his debts by pledging his Federal Land Bank stock and by mortgaging some 8,200 acres of farmland he owned in Franklin and Catahoula Parishes.
Yarbrough defaulted on the loans in 1985 when the depression grossly affected the value of farmland. In lieu of taking bankruptcy, Yarbrough dationed his land and stock to the Federal Land Bank of Jackson to satisfy the indebtedness, while leasing back from the Bank 2,662 acres of the land, to which he claimed "a very personal [family] attachment." The dation and the lease were executed March 20, 1985.
The lease gave Yarbrough the "first right of refusal" to buy all or part of the leased land "at the purchase price offered [to the Bank] by a third party within 30 days after receiving written notice of said offer." The term "third party" was not defined in the lease. The right of first refusal terminated with the lease on January 10, 1986.
A cotton gin which Yarbrough had long operated was among the improvements on the leased property. In July 1985, the Bank notified Yarbrough that it had received *1330 an offer to buy the cotton gin property for $200,000. Yarbrough exercised his right of first refusal and bought back the cotton gin property (about six acres) for that price.
Other offers to buy, if any, were not communicated to Yarbrough before the lease terminated January 10, 1986.
Yarbrough suspected that the Bank had received but had not notified him of other offers to buy the 2,656 acres remaining after the cotton gin transaction. On March 4, 1986, Yarbrough's attorney inquired in writing whether the Bank had received any offers on the property or had "taken any action to prevent consideration of offers prior to the expiration of the lease under which Mr. Yarbrough was granted a right of first refusal."
The Bank replied that it "was obligated to give Mr. Yarbrough the opportunity to purchase the land at such time as an offer from a third party acceptable to the Bank was received. Our files indicate that we received no offers."
Yarbrough's action against the Bank, filed August 4, 1986, made these factual allegations:
Yarbrough's son-in-law, George McAlister, made a good faith offer to the Bank to buy about 1,900 acres while the right of first refusal was in effect;
the Bank did not communicate the offer to Yarbrough;
the Bank included the land in a published list of bank-owned property it offered to sell but indicated that this property would not be sold until January 1, 1986, shortly before Yarbrough's right of first refusal expired; and
Yarbrough did not learn, until after his right of first refusal expired, that the Bank had an internal policy that it would not sell land it had acquired because of a mortgage loan default to either the defaulting debtor or that debtor's spouse, parents or children.
Yarbrough alleged that the Bank had no intention of honoring his right of first refusal and claimed $10,000,000 in damages for alleged loss of profits he would have realized had he had the opportunity to buy the land back.
Yarbrough died June 7, 1989. The substituted plaintiffs filed an amended and supplemental petition on May 29, 1990, increasing the demand for damages to $30 million. By that time, the Federal Land Banks in Jackson, Alexandria and Rayville had been placed in receivership after having gone through mergers into "Federal Land Bank Associations." The amended and supplemental petition further joined as defendants these entities, including the Banks in Receivership and the Federal Land Bank Associations in Receivership.
Bruner, the exceptor-appellee in this appeal, was among the individual officers who were also joined as defendants in the amended and supplemental petition. In that petition, plaintiffs alleged with more particularity in over 100 paragraphs the actions taken by defendants to intentionally avoid honoring Yarbrough's right of first refusal. Reiterating the Bank's policy of refusing to sell to a defaulting debtor property it acquired because of the default, plaintiffs asserted that the Bank sold to others for less than the amount of Yarbrough's debt the property that Yarbrough leased from the Bank.
Plaintiffs effectively alleged that Bruner, before January 10, 1986, while the right of first refusal was in effect, rejected two offers to the Bank to buy the leased land: one offer by Yarbrough's son-in-law for $929 per acre and the other by a neighboring farmer, J.C. Gilbert, for $1,000 per acre, and thereafter caused the Bank to sell the land to other buyers for about $640-740 per acre.
While increasing their claim for damages, plaintiffs sought specific performance of the right of first refusal in their amended petition. Plaintiffs have not argued, however, either below or here, that their demand for specific performance remains viable. In the light of the allegation that the Bank sold the land to others, we consider the only practical, viable demand against the appellees is for damages.

*1331 BRUNER'S EXCEPTIONS
Bruner's exception of prescription asserted that the plaintiffs' claim against him, brought on May 29, 1990, being delictual in nature, prescribed at the latest on January 10, 1987, one year after the lease and the right of first refusal terminated.
Plaintiffs contended that Bruner and the Bank were solidary obligors and that the original petition, timely filed against the Bank, interrupted prescription against Bruner. Plaintiffs also claimed prescription was interrupted by contra non valentem because certain information material to their claim was intentionally concealed by the Bank until Sylvan Gremillion, a former employee of the Federal Land Bank of Alexandria, left his employment and disclosed the information to plaintiffs in August 1989.
Bruner also filed an exception of no cause of action, claiming that the amended petition failed to state a cause of action against him because plaintiffs did not allege the element of "absence of justification." Bruner argued the allegation was necessary to state a cause of action against a corporate officer for intentional interference with contractual relations between the corporation and a third person under 9 to 5 Fashions, Inc. v. Spurney, 538 So.2d 228 (La.1989).
Plaintiffs argued that Bruner's lack of justification was an affirmative defense which Bruner had to plead and prove and was not an element of their cause of action.
Alternatively, plaintiffs relied on their amended petition, contending that because Bruner's actions resulted in financial loss to the Bank, his actions were "unjustified." Plaintiffs referred to the allegations that Bruner, on behalf of the Bank, rejected two offers to buy the land Yarbrough leased (one for $929 per acre and the other for $1,000 per acre) while the right of first refusal was in effect, and thereafter caused the Bank to sell the land to others for about $640-740 per acre.
The trial court sustained Bruner's exception of prescription, finding that the amended petition did not relate back to the date of filing of the original petition under CCP Art. 1153 and Ray v. Alexandria Mall, 434 So.2d 1083 (La.1983). The court did not address the issues of solidary liability and contra non valentem.
The court also sustained Bruner's exception of no cause of action, relying on this language in 9 to 5 Fashions, Inc. v. Spurney, supra:
[A corporate] officer is privileged to induce the corporation to violate a contractual relation, or make its performance more burdensome, provided that the officer does not exceed the scope of his authority or knowingly commit acts that are adverse to the interests of his corporation. Where officers knowingly and intentionally act against the best interest of the corporation or outside the scope of their authority, they can be held liable by the party whose contract right has been damaged.
538 So.2d at 231.
The court found that plaintiffs failed to allege that Bruner acted outside the scope of his authority and contrary to the best interest of the Bank.
In a single judgment, the court sustained both of Bruner's exceptions and dismissed plaintiffs' demands against him with prejudice. Leave to amend was not sought or given.

SUMMARY JUDGMENT
Granting the summary judgment, the trial court reasoned that because the Bank in Receivership lacked funds to pay claims of general unsecured creditors, plaintiffs could not obtain any effective relief even if they prevailed. The court said, "the doctrine of prudential mootness should apply [to allow] this Court and the parties to avoid the vain and useless exercise of litigating this judgment proof claim." The "prudential mootness" doctrine was recognized in FSLIC v. Locke, supra, and other federal cases cited to the trial court by defendants.
The motion for summary judgment by two of the corporate defendants, Federal Land Bank of Jackson in Receivership and Federal Land Bank Association of Jackson *1332 in Receivership, was founded on these sworn assertions:
these defendants were declared insolvent by the Farm Credit Administration on May 20, 1988;
REW Enterprises, Inc. was appointed as the receiver for these defendants;
under the federal regulations governing the distribution of defendants' assets, claims of general creditors are paid last;
plaintiffs' claims are those of general creditors;
the Farm Credit Administration formally declared, on November 14, 1990, after review of defendants' records and an independent audit of financial statements, that the defendants' assets "are insufficient to pay any asserted or unasserted claims of [their] general creditors";
most of defendants' assets were sold to other banks in the Farm Credit System, which banks assumed certain of defendants' obligations but expressly disclaimed liability for any obligations owed to defendants' general creditors; and
any funds or assets remaining when the receivership is terminated "cannot be paid to the general unsecured creditors of the [defendants], but must be paid to the [Farm Credit System Financial] Assistance Corporation," which provided over $30 million in assistance to prevent defendants from defaulting on payment of consolidated and System-wide bond obligations, which rank higher in priority than payments to general creditors.
These defendants argued that plaintiffs' claims were moot because a money judgment against the Bank in Receivership would afford them no practical relief.

PLAINTIFFS' OPPOSITION
In a memorandum in opposition to the motion, plaintiffs asserted that the affidavit of REW's president and CEO, W.E. Harvey, one of the supporting documents which we have summarized above, failed to comply with CCP Art. 967. That article provides in part that "sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."
Plaintiffs complain that no documents are attached to the affidavit to support Harvey's assertions that defendants "sold substantially all of [their remaining] assets" to other banks in the Farm Credit System and "received financial assistance from the Farm Credit System Financial Assistance Corporation." Plaintiffs also contend that the copy of the audit report that is attached to Harvey's affidavit is not properly sworn or certified.
Art. 967 does not require certified evidence to prove every statement made by an affiant in support of a motion for summary judgment. Settoon v. St. Paul Fire & Marine Insurance Company, 331 So.2d 73 (La.App. 1st Cir.1976). The affidavit affirmatively shows that Harvey, as president and CEO of the corporation appointed as defendants' receiver, is competent to testify, from personal knowledge, to the matters stated in the affidavit. See and compare Bank of Iberia v. Hewell, 534 So.2d 143 (La.App. 3d Cir.1988).
Plaintiffs have not attempted to, and cannot, as a matter of law, collaterally attack the FCA's determination that the assets of these defendants "are insufficient to pay any asserted or unasserted claims of [their] general creditors." A certified copy of this formal determination by FCA is attached to the motion for summary judgment. The undisputed material fact is that the defendants in receivership do not now have, and will not have in the future, sufficient assets to pay the claims of general creditors. See and compare FSLIC v. Locke, supra; 281-300 Joint Venture v. Onion, 938 F.2d 35 (5th Cir.1991), U.S. cert. denied; and FDIC v. Browning, 757 F.Supp. 772 (N.D.Tex.1989).
A moot case is one which seeks a judgment or decree which, when rendered, can give no practical relief. Robin v. Concerned Citizens, St. Bernard, Inc., 384 So.2d 405 (La.1980); Simonelli v. Simonelli, 599 So.2d 445 (La.App. 2d Cir.1992), J. Brown dissenting. Whether viewed in the light of the federal cases cited above, or *1333 under the general principles of mootness recognized under state law, plaintiffs' claims against the insolvent defendants, Federal Land Bank of Jackson in Receivership and Federal Land Bank Association of Jackson in Receivership, are moot.
Litigants and courts should not expend time and resources which will accomplish no practical purpose or result. Even if they prevail in all respects against these defendantsinsolvent banks in receivership who cannot pay general creditorsplaintiffs, as judgment creditors of these defendants, will have nothing other than a paper, uncollectable, judgment. Under these circumstances, the trial court properly granted summary judgment dismissing plaintiffs' demands against these insolvent defendants on the grounds of "prudential mootness." See and compare FSLIC v. Locke, supra, 281-300 Joint Venture v. Onion, supra, and FDIC v. Browning, supra.
As an additional ground for granting summary judgment, the court found that "the D'Oench Duhme Doctrine should apply in this case," citing Grant v. Federal Land Bank of Jackson, 559 So.2d 148 (La.App. 2d Cir.1990), writ denied, U.S. cert. denied. That doctrine, based on D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), allows the receiver of a failed federally regulated bank to enforce the bank's agreement with a borrower, as evidenced by the bank's records, without being bound by "side agreements" between the bank and the borrower, such as an agreement that a promissory note will not be collected.
In Grant, we applied the D'Oench Duhme doctrine to lender liability claims against REW Enterprises, Inc., as the receiver of the Federal Land Bank of Jackson.
The trial court did not assign reasons for its finding that the D'Oench Duhme doctrine "should apply." The court apparently concluded that while the right of first refusal was contained in the Bank's records, the Bank's alleged agreement to market the Yarbrough property and to communicate offers to Yarbrough to trigger the right of first refusal was a "side agreement" that is unenforceable under D'Oench Duhme and Grant.
We do not review the correctness of the trial court's application of the D'Oench Duhme doctrine because we are affirming summary judgment on the grounds of prudential mootness.

NO CAUSE OF ACTION; "JUSTIFICATION" ELEMENT
If lack of justification is an element of plaintiffs' cause of action against Bruner rather than an affirmative defense, plaintiffs contend their amended petition sufficiently alleges Bruner's lack of justification. Alternatively, if those allegations are insufficient, plaintiffs contend the trial court should have granted them leave to amend rather than dismissing the claim against Bruner with prejudice.
We find that lack of justification is an element of plaintiffs' cause of action and is not an affirmative defense that must be pleaded by Bruner.
The cause of action against a corporate officer for intentional interference with the corporation's contractual relations with a third person was recognized in 9 to 5 Fashions, Inc. v. Spurney, supra. After discussing Louisiana's longstanding refusal to recognize the common law cause of action for tortious interference with contractual relations, which all other states recognize, the 9 to 5 court nevertheless declined "to adopt whole and undigested the fully expanded common law doctrine of interference with contract, consisting of `a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way.' [quoting from Prosser and Keeton, The Law of Torts ]." 538 So.2d at 234.
Notwithstanding the above observation, the court recognized a more limited cause of action, stating that *1334 an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct....
Since officers owe fiduciary obligations to the corporation and its shareholders and hold policy making positions, their fidelity and freedom of action aimed toward corporate benefit should not be curtailed by undue fear of personal liability. However, the officer's privilege should not be absolute, it should be limited by the purpose for which it is granted, i.e., to allow him to fully perform his fiduciary duty as authorized by his corporation. When the officer's action is detrimental to the corporation or outside the scope of his authority, the officer should be responsible for his intentional acts of interference with the contract rights of another....
For purposes of analysis, the action against a corporate officer for intentional and unjustified interference with contractual relations may be divided into separate elements: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.
538 So.2d at 231-234; citations omitted; emphasis added.
Judgment against the corporate officer, Spurney, was reversed notwithstanding that the plaintiff proved the contract's existence and Spurney's knowledge of it, because "the evidence in this case does not present a reasonable basis for finding that Spurney intended to make 9 to 5's performance more difficult or costly, or that he acted outside the scope of his authority or in a manner he knew to be detrimental to his corporation's interest." 538 So.2d at 234. The court expressed no opinion on the sufficiency of the plaintiff's proof of damages "because Spurney's conduct was not actionable." Id.
Although the judgment reviewed in 9 to 5 was one rendered on the merits rather than on an exception of no cause of action, we think the opinion is clear that the corporate officer's lack of justification is an essential element of the plaintiff's cause of action, which the plaintiff must allege and prove for the officer's conduct to be actionable.
The trial court quoted language from 9 to 5 stating that the officer may be liable if he acts against the best interest of the corporation or outside the scope of his authority. 538 So.2d at 231, quoted supra. The court then found that plaintiffs had not alleged that Bruner acted contrary to the Bank's best interest and outside the scope of his authority. The 9 to 5 case consistently states that the officer may be liable if he acts without authority or to the corporation's detriment. 538 So.2d at 231, 232, 234, 235. Plaintiffs need not allege both elements to establish the officer's lack of justification, as the trial court implicitly found.
In the amended petition, plaintiffs allege that Bruner was president of the Federal Land Bank of Jackson during Yarbrough's dealings with the Bank; that Bruner knew of Yarbrough's right of first refusal and expressed, at board meetings, his intention "not to let Yarbrough have the property back"; that Bruner "set policy that the properties could not be sold to George Yarbrough as a debtor ... or [to his] relatives... at less than the full amount of the debt on the property and that offers not be communicated to Yarbrough in spite of his right of first refusal"; that Bruner did not tell Yarbrough of the Bank's policy when Yarbrough asked why the Bank had refused the offer of Yarbrough's son-in-law, *1335 George McAlister, to buy the property for the appraised value of $929 per acre; that Bruner rejected the offer of Gilbert, Yarbrough's neighbor, for $1,000 per acre without telling Yarbrough of the offer; and that the Bank sold the property to other buyers after Yarbrough's right of first refusal expired for about $640-740 per acre, substantially less than the amounts offered by McAlister and Gilbert while the right of first refusal was in effect.
Implicit in these allegations is the assertion that the actions Bruner took to prevent Yarbrough from reacquiring the property, including his role in establishing the policy on reacquisition by debtors or their relatives, caused financial detriment to the Bank.
When considering the exception of no cause of action, we are required to accept the allegations as true, notwithstanding that they may be disputed or disproved at trial. The exception of no cause is triable on the face of the petition. Doubt as to the sufficiency of the petition is resolved in the plaintiff's favor if the allegations may be reasonably interpreted as stating a cause of action. No. Cent. Util. v. East Columbia Water Dist., 449 So.2d 1186 (La.App. 2d Cir.1984). See also Constance v. Jules Albert Const., Inc., 591 So.2d 1238 (La.App. 4th Cir.1991), writ denied.
We find that plaintiffs have sufficiently alleged that Bruner acted contrary to the corporation's best interest, and thus without justification, so as to state a 9 to 5 limited cause of action for Bruner's intentional interference with the Bank's contractual relations with Yarbrough.

EXCEPTION OF PRESCRIPTION
The trial court sustained Bruner's exception of prescription on findings that the amended petition did not relate back to the filing date of the original petition. The court did not address plaintiffs' argument that prescription against Bruner was interrupted by the timely filing of the suit against the Bank because Bruner and the Bank are solidary obligors. CC Arts. 1794, 1799.
Solidary liability is not presumed, but must be proved by the party who asserts it. Art. 1796; Lowe v. Rivers, 448 So.2d 848 (La.App. 2d Cir.1984). An obligation is solidary when each obligor is liable for the whole performance of the obligation. Art. 1794. When two obligors are coextensively liable for at least part of the obligee's damages, the obligation is solidary as to their common liability. Narcise v. Illinois Cent. R. Co., 427 So.2d 1192 (La.1983). The fact that the respective obligations of the obligors derive from different sources, such as tort and contract, does not defeat solidarity. Art. 1797; Finn v. Employers' Liability Assurance Corporation, 141 So.2d 852 (La.App. 2d Cir.1962); Rabai v. First Nat. Bank of Gonzales, 492 So.2d 90 (La.App. 1st Cir.1986), writ denied.
In their original and amended petitions, plaintiffs sought recovery from both the Bank and Bruner for the same element of damages: the loss of profits they would have realized from farming and ginning cotton if Yarbrough had reacquired his land from the Bank under the right of first refusal. Plaintiffs alleged that these damages were caused by the Bank's breach of contract and by Bruner's tortious interference with Yarbrough's contractual rights. Bruner and the Bank are deemed solidary obligors with respect to these damages, notwithstanding that plaintiffs have not alleged that Bruner is liable for other damages that plaintiffs sought against the Bank in their original petition (for conversion of movable property and failure to correct property descriptions in the dation and in the sale of the cotton gin property). See and compare Narcise and Rabai, both cited supra, and Amer. Grain Ass'n v. Canfield, Burch & Mancuso, 471 So.2d 1125 (La.App. 3d Cir.1985).
The timely suit against the Bank interrupted prescription against Bruner. CC Art. 1799. The Bank's subsequent insolvency and dismissal by summary judgment for inability to pay claims of any general creditors does not defeat a finding that the Bank and Bruner were solidary obligors *1336 when the action was brought against Bruner. The Bank was not dismissed because it was immune from liability for breach of contract, but because it cannot, as a practical matter, pay any judgment that may be rendered against it. The facts here are distinguishable from those in cases where the immunity of the timely-sued defendant, such as an employer who is statutorily immune from tort claims by an injured employee, precluded a finding of solidarity between that defendant and a third party against whom tort claims were asserted after prescription had run. Gibson v. Exxon Corporation, 360 So.2d 230 (La.App. 1st Cir.1978), writ denied; Wicker v. Coca-Cola Bottling Co., 418 So.2d 1378 (La.App. 5th Cir.1982), writ denied.

DECREE
We affirm the summary judgment dismissing plaintiffs' demands against the Federal Land Bank of Jackson in Receivership and the Federal Land Bank Association of Jackson in Receivership. Costs in the appeal of that judgment are assessed to plaintiffs.
We reverse the judgment sustaining Bruner's exceptions of no cause of action and of prescription at the cost of plaintiffs. We hereby render judgment overruling Bruner's exceptions at his cost, here and below. CCP Art. 2164.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.