670 So.2d 748 (1996)
William Henry SANDERS, Plaintiff-Appellee,
v.
Carl ZEAGLER, et al., Defendants-Appellants.
Nos. 95-1344, 95-1346.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
Rehearing Denied April 17, 1996.
*751 William Henry Sanders, Galen Wade McBride, Alexandria, for William Henry Sanders and Bessie O. Sanders.
Carl Zeagler et al., pro se.
Henry Gerard Terhoeve, Baton Rouge, for Louisiana Insurance Guaranty Association.
Howard Louis Murphy, New Orleans, for INA Underwriters Ins. Co. & A.D. Mathys.
Mark Alan Watson, Alexandria, for James Bradford & Bradford Ins. Agency.
Before DOUCET, C.J., and YELVERTON and SAUNDERS, JJ.
DOUCET, Chief Judge.
These consolidated cases arise out of a contract to build a house and the problems which later arose in the structure of the house. The defendants, INA Underwriters Insurance Company (INA) and Louisiana Insurance Guaranty Association (LIGA), appeal the trial court's judgment in favor of the plaintiffs, William Henry Sanders and Bessie 0. Sanders.
In 1976, William and Bessie Sanders hired A.D. Mathys to design a house in Jena, Louisiana. Mathys further agreed to act as the Sanders representative on the building site. The Sanders contracted with the low bidder, Zeagler Construction Company (Zeagler), to build the house. Because Zeagler could not obtain a performance bond for more than $200,000, the work was divided between two contracts. One covered clearing and preparing the site and construction of a road and bridge for $46,700. Another contract covered the actual construction of the house for $200,000. Zeagler obtained a performance bond for $200,000 from American Fidelity Fire Insurance Co. for a premium of $3,000. The bond covered performance of the construction contract.
In January 1979, Mathys prepared a punch list of items remaining to be completed at that time. A second punch list was prepared in February. A certificate of substantial completion was signed by Mrs. Sanders on February 19, 1979. The Sanders moved in the spring of 1979. Three more punch lists were prepared during the following year. Many problems remained uncorrected. In February 1980, Sanders and Mathys wrote to American Fidelity placing Zeagler in default.
On July 30, 1981, William Sanders filed this suit demanding that Zeagler finish construction of the house and correct the problems that had arisen. The suit was amended on December 8, 1982, adding Mathys and American Fidelity as defendants, among others. On May 13, 1983, Sanders filed another amended petition adding Mathys' insurer, INA Insurance Company (INA) and a material manufacturer as defendants.
*752 In April 1983, Mathys filed a third-party demand against Zeagler. In August 1984, American Fidelity filed a third-party demand against Mathys, INA and Zeagler.
On October 15, 1985, the superintendent of insurance for the state of New York, on behalf of American Fidelity, filed a motion for a stay of the proceedings against it, giving notice that American Fidelity had been seized by the state of New York. American Fidelity was ordered liquidated on March 26, 1986. As a result, William Sanders and his wife, Bessie, filed a separate action against LIGA on February 21, 1990. In that suit, the Sanders prayed for recovery from LIGA of the amounts for which American Fidelity was responsible under the performance bond. INA filed a third party demand against LIGA. LIGA filed a third-party demand against INA and Mathys.
The suits were consolidated and tried to a jury. The jury awarded damages of $35,000 for repairs already made at the time of trial and $10,000 for future repairs. The jury allocated fault for those damages 75% to Zeagler and 25% to Mathys. The jury awarded $7000 each to William and Bessie Sanders for emotional distress and inconvenience, fault for which was allocated solely to Zeagler. Prior to the rendition of judgment, Sanders and his wife moved for additur, judgment notwithstanding the verdict, and a new trial. The trial judge granted the JNOV. He issued written reasons for judgment increasing the award for past repairs to $70,000 and the award for future repairs to $35,000. He increased the award for emotional distress to $50,000 total and assigned 25% of the fault therefor to Mathys. He rendered judgment, in pertinent part, as follows:
While a single Judgment is rendered, the Judgment is respectively separated in that the cases were consolidated for trial purposes, but remained separate lawsuits.
* * * * * *
It is ORDERED, ADJUDGED AND DECREED that, pursuant to the JNOV granted by this Court on January 7, 1994, the aforementioned judgment in suit number 18,004 be modified to read as follows:
It is ORDERED, ADJUDGED AND DECREED that there be judgment in favor of William Henry Sanders and against INA Underwriters Insurance and the Louisiana Insurance Guaranty Association, in solido, in the amount of one hundred thirty thousand dollars ($130,000) together with legal interest thereon from date of judicial demand plus all costs as taxed by this court; and
Judgment in suit number 25,263 be modified to read as follows:
It is ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Bessie O. Sanders and against INA Underwriters Insurance Company and the Louisiana Insurance Guaranty Association, in solido, in the amount of twenty-five thousand dollars ($25,000) together with legal interest thereon from date of judicial demand plus all costs as taxed by this Court.
Liability as to all damages is assessed seventy-five percent (75%) to the Louisiana Insurance Guaranty Association and twenty-five percent (25%) to INA Underwriters Insurance Association.
* * * * * *
Costs in this matter are assessed against the defendants, INA Underwriters Insurance Association and Louisiana Insurance Guaranty Association, to be apportioned pursuant to the findings of the jury (i.e., seventy-five percent to LIGA, twenty-five percent to INA) in the amount of $25,128.17.
INA and LIGA appeal citing numerous assignments of error.
BESSIE SANDERS V. INA
INA contends that the trial judge erred rendering judgment against it and in favor of Bessie Sanders in suit number 25,263 since neither it nor Mathys were named as defendants in that suit.
Judgment may not be rendered against a party who is not named as a defendant. Luneau v. Hanover Ins. Co., 478 So.2d 752, 757 (La.App. 3rd Cir.1985).
Moreover, pursuant to LSA-C.C.P. art. 1111, it is necessary that a plaintiff amend his petition to include a third-party defendant *753 as a direct defendant before a judgment may be rendered in favor of plaintiff and against the third-party defendant. Shaffer v. Illinois Central Gulf Railroad Company, 479 So.2d 927, 929 n. 2 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1021 (La.1986).
Dennison v. Liberty Mut. Ins. Co., 94-0026, p. 11 (La.App. 1 Cir. 11/10/94), 645 So.2d 1227, 1233.
After carefully reviewing the record in this matter, we find no pleading whereby INA was named as a defendant in suit no. 25,263, in which Bessie 0. Sanders is a plaintiff.[1] Although LIGA filed a third party demand against INA, Bessie Sanders never amended her suit to name INA as a defendant. Accordingly, the judgment rendered against INA in that suit is void.

VIABILITY OF LIGA AS A DEFENDANT
LIGA has raised several assignments of error which concern its viability as a defendant in the two suits.
1. Judgment in Suit # 18,004
LIGA contends that the trial court erred in granting a judgment against it in suit number 18,004 because the suit was never amended to name it as a party defendant when American Fidelity became insolvent.
Our review of the record in suit number 18,004 eveals that LIGA was never substituted for American Fidelity or otherwise named as a party defendant. This court, in Wilson v. Champion Ins. Co., 607 So.2d 1079 (La.App. 3 Cir.1992), found that, where the plaintiff did not name LIGA as a defendant in her suit for personal injury damages against an alleged tortfeasor and his insolvent insurer, no judgment could be rendered against LIGA. In light of this, we must conclude that the trial judge erred in rendering judgment against LIGA in suit number 18,004.
2. Peremption of Suit # 25,263
LIGA next asserts that suit # 25,263 should be dismissed because it was perempted under La.R.S. 9:2772 inasmuch as it was brought more than ten years after the date of registry in the mortgage office of the acceptance of the work by the owner.
In Camp, Dresser & McKee, Inc. v. Steimle and Associates, Inc., 94-547 (La. App. 5 Cir. 2/15/95), 652 So.2d 44, the court explained that peremption does not extinguish a right when it has been exercised by the filing and service of an action.
La.C.C. art. 3458 states that peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3461 states that peremption may not be renounced, interrupted or suspended. However, the comments note that when an action asserting a right subject to peremption has been commenced or served as provided in Article 3462, the right has been exercised and so long as the action is pending the lapse of the period of peremption does not extinguish the right. Thus, the courts have held that an amendment asserting facts arising from the same conduct relates back. See: Monroe Medical Clinic, Inc. v. Hospital Corporation of America, 622 So.2d 760, 776-777 (La.App. 2nd Cir.1993), writ denied, 629 So.2d 1135 (La.1993); Thibaut v. Thibaut, 607 So.2d 587, 608-609 (La.App. 1st Cir.1992), writ denied, 612 So.2d 37 (La.1993).
Id. at p. 49.
The action against Zeagler and its insurer is subject to the peremptive period of ten years set out in La.R.S. 9:2772. However, William Sanders exercised his right against Zeagler and American Fidelity by filing suit within the limit. La.R.S. 22:1382, in delineating the powers and duties of LIGA, states that:
A. The association shall:
* * * * * *

*754 (2) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent;....
If LIGA had been substituted for American Fidelity as a party defendant in suit number 18,004, there would be no question but that peremption had not extinguished the plaintiffs right against it. Taking a common sense approach, we see no reason why the suit against and service of American Fidelity in suit number 18,004 did not prevent plaintiffs right against LIGA from being extinguished, even though he chose to pursue that right in a separate suit, so long as the first action was pending when the second action was filed and served. Therefore, we find that William Henry Sanders' rights against LIGA were not extinguished by peremption at the time the second suit was filed.
However, Bessie Sanders was not a party plaintiff in suit number 18,004. We find nothing of record to indicate that the pleadings were amended or otherwise expanded to include her as a party plaintiff. Bessie Sanders first became a plaintiff upon the filing of suit number 25,263. We can find no authority for a finding that the suit on behalf of her husband would have prevented peremption of a right of action of Bessie Sanders against Zeagler and American Fidelity. Accordingly, we find that Bessie Sanders' right of action against Zeagler and American Fidelity, and thus against LIGA has been extinguished by peremption.
3. Fraud or Error in Obtaining Bond
LIGA further argues that the trial judge erred in refusing to negate any recovery from LIGA through the performance bond because there was error and/or fraud in its purchase. LIGA asserts American Fidelity's consent to the bond contract was vitiated by error or, alternatively, by fraud. La.Civ. Code art. 1948.
"Obligations set forth in a bond given by a compensated surety are strictly construed in favor of protecting the obligee." Stonecipher v. Mitchell, 26,575, p. 11 (La. App. 2 Cir. 5/10/95), 655 So.2d 1381, 1389.
La.Civ.Code art. 1949 states that: "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La.Civ.Code art. 1950 states that:
"Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation."
After reviewing the record, we conclude that LIGA has failed to show that American Fidelity was induced to furnish a performance bond as a result of an error concerning "a cause without which the obligation would not have been incurred." The testimony does not indicate that American Fidelity would have refused to furnish the bond had they known that the entirety of the construction undertaken by Zeagler was in excess of $200,000. The testimony indicates that American Fidelity was willing to issue a bond to Zeagler for an amount up to $200,000. He asked that the bond be issued in that amount.
La.Civ.Code art. 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." There is nothing to indicate that Zeagler intended to obtain an unjust advantage or to cause a loss to American Fidelity. As we have stated American Fidelity indicated its willingness to bond Zeagler up to $200,000. The bond was issued in that amount. A surety promises to satisfy the entire obligation only where the agreement is not otherwise limited. Stonecipher, 26,575, 655 So.2d 1381. In this case, the bond is limited to $200,000. LIGA may not be held to cover the entire amount of the contract but only the $200,000 to which American *755 Fidelity agreed. Accordingly, we find no error in the trial judge's refusal to negate recovery under the bond.
APPARENT DEFECTS
INA assigns as error the trial judge's failure to dismiss claims for certain items which INA argues were apparent defects.
Even if the owner proves the existence and nature of the defects and the cost of repairing them, he is nevertheless barred from recovering the cost thereof if he accepted the work despite the patent defects or imperfections discoverable upon reasonable inspection. Furthermore, an unqualified acceptance by an owner bars recovery for apparent defects, but acceptance with the understanding that certain defects or deficiencies will be corrected will not bar recovery. Davidge v. H & H Construction Co., 432 So.2d 393 (La.App. 1st Cir.1983); Brouillette [v. Consolidated Construction Co. of Florida, 422 So.2d 176 (La.App. 1st Cir.1982) ], supra. [Emphasis added]
Larkins v. Cage Contractors, Inc., 580 So.2d 1068, 1069-70 (LaApp. 4 Cir.1991). See also West v. Collins, 94-0682 (La.App. 4 Cir. 12/28/94), 648 So.2d 500. Problems brought to the attention of the architect and contractor in punch lists will not be waived by acceptance of the construction where there is an understanding that the defects are to be corrected. See Lofton v. Don J. Trahan, Inc., 399 So.2d 818 (La.App. 1 Cir.1981).
The defects claimed by INA to have been apparent are the location of the lavatory in the master bath, the location of the toilet in the master bath, the manner in which the wall board was finished around the doorjambs and stonework, the interface of cabinets to stone walls, the level of completion of the wood storage room, the attachment of the doors of the kitchen cabinets, the level of the kitchen counter and the slope of the patio and carport slabs.
The Sanders moved into the house in February or March 1979. The certificate of substantial completion was signed on February 19, 1979. The testimony at trial establishes that Mathys encouraged the Sanders to move in so as to find out what the problems were with the house. The acceptance of the house was signed with this understanding. Sanders testified that everyone involved knew there were problems with the house. Four punch lists were prepared by the parties involved. Two were prepared before the Sanders moved in and two after. Those punch lists included complaints with regard to the wood storage area. Further, in July 1979, Sanders wrote to Zeagler with regard to a variety of problems, including the bathroom fixtures and the accumulation of water on the porch. The punch lists do not specifically mention the slope of the patio. However, the patio slab was covered by a deck until it rotted because of lack of weep holes in its supports to allow drainage as well as because of the lack of a slope. The lack of slope was not apparent until the deck was removed. The testimony of A.D. Mathys, INA's insured, establishes that the misalignment of the kitchen cabinet doors was not apparent but developed over time. However, Mathys' testimony is uncontradicted in indicating that Sanders never complained about the way the cabinets or the sheetrock were scribed to the stone. We can find no indication that the problems with regard to the location of the lavatory and toilet in the master bath or with regard to the slope of the carport were brought to the attention of the contractor or the architect. However, the testimony of Mr. Zeagler indicates that both he and Mr. Mathys were aware that the carport was not draining properly prior to pouring the patio. As a result, we find that the defects as to the location of the lavatory and toilet and as to the scribing of the sheet-rock and cabinets to the stone walls have been waived.
PEREMPTION
INA contends that the plaintiffs claims for defects in the chimney foundation, the carport gable and the functioning of the air conditioning are perempted under La. R.S. 9:2772, because suit was not filed claiming those defects within ten years of the acceptance or occupancy of the house. An examination of the record reveals that the original suit filed against Zeagler on July 30, 1981, noted defects in the foundation, air conditioning system and the roof. That suit was amended on December 5, 1981, to include *756 Mathys (INA's insured) as a defendant. In that amendment, the plaintiff notes cracking around the chimney and/or fireplace. The petition was again amended on May 13, 1983. That amendment makes specific claims for improper design of roof and eave supports causing sagging and leaking, and failure to supervise construction of the slab. All these amendments took place within the ten-year peremptive period. Accordingly, we find that plaintiffs claims for these items were not perempted by action of La. R.S. 9:2772.
HUGGINS' REPAIR ESTIMATES
INA asserts that the trial judge erred in allowing plaintiffs expert architect, Jim Huggins, to testify with regard to repair estimates prepared by a contractor who did not testify at trial.
As was stated by the court in Socorro v. Orleans Levee Bd., 561 So.2d 739, 766 (La. App. 4 Cir.1990); affirmed in part; reversed in part (on other grounds), 579 So.2d 931 (La.1991):
Louisiana Code of Evidence Article 703 reads:
"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." [Emphasis added.]
LSA-C.E. Article 703 tracks verbatim corresponding Rule 703 of the Federal Rules of Evidence. In addressing this same issue of the use by an expert witness of information provided by another source in arriving at a cost estimate, this Court in Barley v. State, through the Department of Highways, 463 So.2d 689 (LaApp. 4th Cir. 1985) stated:
Although we can find no civil cases in Louisiana that deal with this issue, it is interesting to note that the Federal Rules of Evidence specifically allow the type of testimony involved in this case. Rule 703 states:
`The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.'
Thus, an examination of all the relevant law on this point convinces us that the portion of [contractor's] estimate taken from the leveling sub-contractor is allowable.
In this case, Huggins determined those repairs that were, in his opinion, needed. He testified that it was the practice of architects, in this kind of situation, to consult a contractor with regard to pricing a repair. Since, ultimately, the contractor must do the work, a contractor can give a more accurate cost estimate than those which can be obtained from the books available to architects for such estimates. Neither defendant introduced any evidence to suggest that this is not the type of information reasonably relied upon by experts in the field of architecture in forming opinions or inferences upon the subject. Therefore, we find that the trial judge did not err in allowing Huggins to testify from the estimates so obtained. JNOV
Both INA and LIGA assert that the trial judge erred in granting the plaintiffs motion for judgment notwithstanding the verdict (JNOV). This court in Batiste v. New Hampshire Ins. Co., 94-1467, p. 3 (La.App. 3 Cir. 5/3/95), 657 So.2d 168, 169, writ denied, 95-1413 (La. 9/22/95), 660 So.2d 472, outlined the standard for granting a JNOV as well as the standard of appellate review thereof:
The article controlling the use of a JNOV is La.Code Civ.P. art. 1811. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could *757 not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991).
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting it. This is done by using the above criteria just as the trial judge does in deciding whether to grant the motion or not, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. Anderson, 583 So.2d at 832.
Since we have previously found the claims of Bessie 0. Sanders against LIGA to have been perempted and the judgment in her favor against INA to be without basis, we will consider the merits of the motion for JNOV only as concerns the claims of William Henry Sanders.
1. Past Repairs to House
The jury awarded damages of $35,000 for repairs already made. The trial judge increased this amount to $70,000. Both INA and LIGA assert that the trial judge erred in increasing the jury award.
In a related assignment of error, INA contends that the trial judge erred in allowing admission of certain invoices allegedly evidencing repairs done to the house by Lavelle Masters, in the absence of testimony from Masters connecting those invoices to the work on the house. The record supports INA's contention that Masters did not identify the disputed invoices (totaling $31,050.36), in his testimony. Sanders, Lavelle Masters, and Phillip Beard, a civil engineer, testified concerning the repairs represented in the disputed invoices. Plaintiff testified that the repairs were done by Masters and those he hired for the jobs. Sanders, Masters, Beard, and Jim Huggins, an architect consulted in connection with the repairs, testified as to the need for those repairs. Defendants have presented no evidence that these repairs were not done and were not billed as represented in the invoices. Accordingly, we find that the invoices were properly introduced into evidence. See Guillory v. Shelter Mut. Ins. Co., 542 So.2d 850 (La.App. 3 Cir.1989); Lennix v. Labee, 94-748 (La.App. 5 Cir. 2/15/95), 652 So.2d 50, writ denied, 95-0678 (La. 4/28/95), 653 So.2d 594; Howery v. Linton, 452 So.2d 295 (La.App. 2 Cir.1984). Therefore, we must consider the jury's award in light of all the repair invoices introduced at trial, as well as in light of the testimony of the parties and expert witnesses.
The record herein is replete with evidence of the need for the repairs done to the house. There is no evidence of record which would indicate that any of the items repaired was either not in need of repair or that the repairs were not necessitated by defects in design or construction. As a result, we find that reasonable persons could not conclude that the amount awarded by the jury was sufficient recompense for the past repairs to the Sanders' residence. Having so found we must consider whether the trial judge's award pursuant to the motion for JNOV is proper.
In determining the proper amount of damages to be awarded, the trial judge is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded that court. The trial court renders a de novo award based on his independent assessment of injuries and damages. Anderson, 583 So.2d at 833-834. The court of appeal reviews the judgment of the trial court under the constraints of Coco v. Winston *758 Industries, Inc., 341 So.2d 332 (La.1976): an appellate court can disturb a quantum award made by the trial court only if the record reveals that the trial court abused its discretion.
Batiste, 657 So.2d at 171.
The repair invoices evidence repairs in excess of $70,000. There was extensive testimony with regard to the vast extent of the repairs needed. The record supports the conclusion that few, if any, repairs were done that were not needed, if only to prevent the condition of the house from worsening. The testimony by the defendants' experts does nothing to controvert the necessity or the extent of the repairs. Accordingly, we cannot say that the trial judge's award is clearly wrong or an abuse of discretion.
2. Future Repairs
The jury awarded $10,000 for future repairs to the house. The judge increased this award to $35,000. The jury's award is lower than the lowest amount recommended using the estimates made by the defendant's experts. The following table illustrates the estimated cost of repairs needed, as testified to by the experts, for each deficiency claimed by the plaintiffs, after removing those items with regard to which we have found the claims have been waived.

ITEM Plaintiffs' Experts Defense Experts
 BROCKWAY EVANS
Carport Gable 26,000.00 $ 00.00 $ 500.00
Rear Window Wall $66,466.00 *
 Reset Windows $5,797.00
 Rehang Doors $ 819.00
Carport Slab $30,000.00 $4,321.33 $2,000.00[2]
Patio Slab [*] $3,547.00
Kitchen Counter $2,208.00 [*]
Kitchen Cabinets $10,800.00 $ 577.20 $ 440.00
Master Bath Tub $10,860.00 $1,801.86 $1,500.00
Chimney $78,000.00 [*] $4,407.00
Air Conditioner $5,175 to $7,100 [*] $ 840.00
Septic Tank $ 4,608.00 [*] $ 665.00
Flagstone Floor * [*] $ 150.00
Wood Storage Area $ 2,808.00 $ 512.46 $ 500.00
* This expert did not testify in connection with this item.

Using the lowest repair estimate for each item, repairs would total $20,665.00. Based on the evidence of the defense experts alone, we find that it was unreasonable for the jury to conclude that future repairs to the house would amount only to $10,000. The trial judge's setting aside of the jury's award of $10,000 for future repairs was correct as the award was abusively low.
Accordingly, we must determine whether the trial court's award of $35,000 for future repairs was an abuse of discretion.
Huggins' testimony indicated that his estimates were generally based on the assumption that each situation would be worse than expected once the contractors began their work. Further many of his estimates required tearing out entire systems and reinstalling them from the ground up. The defense experts, on the other hand, gave estimates which could be construed to be low given the situation as it existed. Evans' estimates in particular appear to be mere "ball park" figures rather than carefully researched estimates. Considering the evidence that was presented in the trial court, we find no abuse of discretion in the award of $35,000.
3. Mental Anguish
LIGA argues that the trial court erred in increasing the award made to the Sanders *759 for mental anguish. Having previously vacated the award to Mrs. Sanders, we need not consider that portion of the award.
In order to recover nonpecuniary losses in connection with a breach of contract claim, a party must show that "the nature of the contract was to gratify a significant nonpecuniary interest by way of contract and that the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee." Mayerhofer v. Three R's Inc., 597 So.2d 151, 155 (La.App. 3 Cir.), writ denied, 600 So.2d 680 (La.1992). In this case, the evidence shows that the Sanders hoped to satisfy a nonpecuniary interest in building their home. The testimony evidences years of saving and planning in order to build the house. Mr. Sanders testified that he wanted a house in this particular location because of the beauty of the setting. Further, he wanted a large open house because of his claustrophobia. He wanted to be able to view the outdoors through large windows. Finally, he wanted a low maintenance house in which to grow old. Given the testimony as to the continual problems encountered by Mr. Sanders in his occupation of the house and extending over a period of more than ten years, the award of $7000.00 to Mr. Sanders for mental anguish was abusively low. Therefore, we must address the question of whether the trial judge abused his discretion in awarding $25,000 to Mr. Sanders for mental anguish.
The evidence adduced at trial shows that the roof began leaking as soon as the Sanders moved in, if not before. After multiple repairs, and years of leaks, the entire roof was finally replaced. The picture windows Mr. Sanders so desired began leaking, ruining the carpeting. Mr. Sanders' view through the windows was obscured by condensation forming between the panes because of improper installation. Rather than being highly energy efficient, the windows developed openings around the frame which allowed air to flow through. Defects in the construction of the chimney raised concerns about fires and required multiple repairs. Defendants own expert, Mr. Evans testified that the fireplace and chimney were still not safe. Failure to put a drain line from one air conditioning unit caused flooding and the ruin of another carpet. At one point Mr. Sanders became concerned that the main structural beam in the house was unsound and would cause the house to fall in. Flagstone floor tiles came loose. Cabinet doors sagged. Doors sagged on their hinges, making them difficult, if not impossible, to open. The deck rotted out due to improper installation of the decking and the underlying slab. The deck had to be removed. The gutters rotted and had to be removed. As a result of the gutter problems, fascia boards rotted and had to be replaced. Defects in the septic system caused problems getting toilets to flush. Additionally, there was a smell of sewerage in the yard.
Given the large number of problems with the house, their continuing nature, and the long time span over which the problems continued, we cannot say the trial judge erred in awarding $25,000 to Mr. Sanders for mental anguish.
COSTS
Both INA and LIGA assert that the trial judge erred in assessing costs without holding a contradictory hearing. The court assessed costs in the amount of $24,128.17 to be apportioned 25% to INA and 75% to LIGA. The defendants argue that they are entitled to a contradictory hearing under La. Code Civ.Proc. art. 1920. That article provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Nothing in this article requires that costs be taxed pursuant to a rule to show cause as it states that costs may be taxed via rule. We can find nothing of record which evidences an attempt by the defendants to obtain a hearing regarding costs. Defendants' briefs fail to make any reference to the record in support of their argument that they requested such a hearing. See Uniform RulesCourts of Appeal Rule 2-12.4. La. Code Civ.P. art. 1920 allows the trial court to *760 assess costs as it considers equitable. After reviewing the record in this case, we cannot say that the assessment is inequitable or an abuse of the trial court's discretion.
SOLIDARITY
Both INA and LIGA contend that the trial judge erred in holding them solidarily liable. LIGA argues in the alternative that if it is held solidarily liable with INA, it is entitled to contribution from INA pursuant to its third-party demand against INA.
Solidary liability is not presumed. It arises from a clear expression of the parties' intent or from the law. LSA-C.C. Art. 1796; Yarbrough v. Federal Land Bank Ass'n, 616 So.2d 1327 (La.App.2d Cir.1993). An obligation is solidary when each obligor is liable for the whole performance. LSA-C.C. Art. 1794. An obligation may be solidary though it derives from a different source for each obligor. LSA-C.C. Art. 1797. Solidary obligations may result, even though the parties are bound under separate contracts, if their respective breaches of their contracts combined and contributed to cause the same item of damages sustained by the plaintiff. Where the combined fault results in a loss for which defendants would be liable for the whole, the defendants' liability may be solidary. Rivnor Properties v. Herbert O'Donnell, Inc., 92-1103 (La.App. 5th Cir. 01/12/94), 633 So.2d 735, writ denied, 94-1293 (La. 09/02/94), 643 So.2d 147, citing Town of Winnsboro v. Barnard and Burk, Inc., 294 So.2d 867 (La.App.2d Cir.1974), writ denied, 295 So.2d 445 (La.1974). It is the coextensiveness of the obligations for the same debt, and not the source of liability, which determines the solidarity of the obligation. Yarbrough, supra; Narcise v. Illinois Central Gulf R.R. Co., 427 So.2d 1192 (La.1983).
Stonecipher, 26,575, at p.p. 5-6, 655 So.2d at 1386.
In this case, as in Stonecipher, Mathys and Zeagler contracted separately with Sanders. Each had separate obligations and duties. There is no evidence that they intended to be bound solidarily. They did not contract to do the same thing. Each was obligated to do only what he contracted to do. Both jury and judge concluded that both Mathys and Zeagler breached a duty to Sanders. Mathys' breach resulted in design defects and Zeagler's breach resulted in construction defects. Therefore, their obligations pursuant to the contract were several. Accordingly, we find that the trial judge erred in holding INA and LIGA solidarily liable.
As a result of this finding, LIGA's claim for contribution is moot. Further, LIGA's arguments that its obligation be limited to $149,000 pursuant to La.R.S. 22:1382A(1)(a) is moot since the judgment against it will not exceed this amount.
CONCLUSION
Pursuant to the reasons given herein, the judgment of the trial court is affirmed in part, reversed in part and the trial court's judgment is amended as follows:
The judgment in Suit number 18,004 is amended to render judgment in favor of William Henry Sanders and against INA in the amount of $32,500.00 together with legal interest from date of judicial demand plus court costs of $6,282.04. The judgment in Suit number 25,263 is amended to render judgment in favor of William Henry Sanders and against LIGA in the amount of $97,500.00 together with legal interest from date of judicial demand plus court costs of $18,846.13. In all other respects, the judgment is affirmed.
Costs of this appeal are assessed 10% to Sanders, 70% to LIGA and 20% to INA.
AFFIRMED IN PART; REVERSED IN PART AND AMENDED.
NOTES
[1] Bessie O. Sanders was not a plaintiff in suit number 18,004 and judgment was not rendered in her favor in that suit.
[2] Evans did not feel this item needed repair, but gave an estimate for resurfacing.