331 So.2d 73 (1976)
Eric B. SETTOON, Jr., et al.
v.
ST. PAUL FIRE & MARINE INS. CO.
No. 10654.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
*74 Eric B. Settoon, Jr., New Roads, for appellants.
Donald T. W. Phelps, Baton Rouge, for defendant-appellee St. Paul Fire & Marine.
John C. Miller, Baton Rouge, for Dr. David S. Miller.
Before LANDRY, COVINGTON and PONDER, JJ.
PONDER, Judge.
Plaintiffs-appellants, Eric B. Settoon, Jr. (Father), Eric B. Settoon, Jr. (Infant) and Vicki Storer Settoon, instituted suit seeking $32,100,000.00 in damages because of the alleged tortious conduct of Dr. Louis I. Tyler in entering a hospital room at Woman's Hospital in Baton Rouge while Mrs. Settoon was breast feeding the infant. Defendants are Woman's Hospital Foundation, d/b/a Woman's Hospital, Dr. Louis I. Tyler, Dr. David S. Miller, and their insurer, *75 Saint Paul Fire and Marine Insurance Company.
The court below granted Dr. Miller's motion for summary judgment and dismissed plaintiff's suit as to that defendant. Plaintiffs have appealed the dismissal.

FACTS
On the morning of June 5, 1974, Mrs. Settoon, pregnant, was admitted to Woman's Hospital by her attending physician, Dr. Joseph Farris, an obstetrician. She signed the standard "Consent for Treatment" form containing the sentence, "The undersigned, as patient or authorized agent of patient, hereby authorizes and consents to any and all medical and all diagnostic treatments as may be deemed advisable by my doctor or such other physician as he may designate." The last clause of such phrase, "such other physician as he may designate," however, was crossed out. At approximately 5:30 p.m. that afternoon, Mrs. Settoon gave birth to Infant, by caesarean section performed by Dr. Farris.
Mr. Settoon in affidavit opposing Dr. Miller's motion for summary judgment states that Dr. Farris, tired and needing rest, stated that he was going home and that Mr. Settoon could select a pediatrician in the morning. Mr. Settoon stayed at the hospital until some time after midnight when he went home after being assured that his wife and Infant were in satisfactory condition.
Plaintiff's petition alleges, inter alia, that the next morning Mr. Settoon returned to the hospital and talked to his wife for a few minutes with the Infant present. Plaintiffs further allege that Mrs. Settoon desired to breast feed Infant, so that, the usual and customary signs were displayed, indicating that Infant was being breast fed and that no admittance was allowed by anyone. Mr. Settoon was required to leave the room and the curtain around Mrs. Settoon's bed was drawn. Allegedly, at this point, Dr. Tyler abruptly entered the room and saw Mrs. Settoon "scantily clad and in an uncompromising (sic) position." [1]

THEORIES OF LIABILITY OF DR. MILLER
Dr. Miller is allegedly liable under numerous theories of law. Essentially they appear to be as follows:
1) Dr. Tyler at the time of the alleged tortious intrusion was supposedly acting as Dr. Miller's partner, agent, or employee and thus, under various theories of law, Dr. Miller is liable for Dr. Tyler's actions.
2) Mr. and Mrs. Settoon admit that it was clearly understood with the hospital that a pediatrician would have to be called in for the Infant. However, it is their contention that it was also understood that they reserved the right to choose the pediatrician, a right they were never allowed. Since Dr. Miller was never selected by the plaintiffs, his actions are allegedly tortious.
And, 3) Dr. Miller, according to paragraph 55 of plaintiffs' petition, "did not use reasonable care and/or skill and was negligent in the premises, proximately causing injury and damages to petitioners, in the following respects:
"a. in acting in breach of the admission contract.
b. in examining Infant without authority.
c. in assaulting a minor.
d. in engaging the services of the defendant, Tyler, without authority.
e. in displaying lack of professional judgment.
f. in displaying lack of judgment.
g. in acting in an uncouth and/or crude manner.

*76 h. in depriving petitioners of their civil rights.
i. in forcing himself and his services upon petitioners.
j. in invasion of privacy.
k. in forcing Tyler and his services upon petitioners.
l. in failing to see what he should have seen and to take heed.
m. in upsetting petitioners to the point that Infant could not be properly cared for.
n. in attempting to solicit business.

o. in breaching professional ethics.
p. in breaching hospital ethics.
q. in breaching hospital rules and regulations.
r. in displaying conduct unbecoming of a physician.
s. in unlawfully obtaining medical information.
t. in depriving petitioners of a choice of pediatricians.
u. in engaging in mal-practice.
v. and was otherwise guilty of not using due or reasonable care or skill and was negligent in the premises."[2]
WERE THERE ANY GENUINE ISSUES OF MATERIAL FACT IN DISPUTE? IS DR. MILLER ENTITLED TO JUDGMENT AS A MATTER OF LAW?
Dr. Miller attached a sworn affidavit to his motion for summary judgment. It reads in pertinent part as follows:
"1. That he is a named defendant in the above entitled action; that he is competent to testify and has personal knowledge of the facts hereinafter set forth except as otherwise designated.

2. Prior and subsequent to June 5, 1974, affiant is and has been a fully licensed physician engaged in the practice of pediatrics in the City of Baton Rouge, Louisiana, and is listed as a staff pediatrician for the Woman's Hospital in that City.
3. That it is a requirement of the Woman's Hospital that all newborn infants be placed under the care of an approved physician. If the parents have not designated one to be responsible for their newborn infant then the obstetrician who delivers the baby will designate a pediatrician to take over the responsibility, or the hospital will assign one from the hospital staff list.
4. Affiant is informed that the Settoon baby was delivered in the late afternoon of June 5, 1974, by caesarian section. No pediatrician having been listed by the parents, Dr. Joseph Farris, since deceased, the attending obstetrician, assigned Dr. Miller to be the attending pediatrician for the infant. Attendants in the hospital nursery routinely called Dr. Miller's residence about 6:30 p.m.; advised that a newborn infant had been assigned to him; and that the infant appeared normal and healthy. In such circumstances Dr. Miller's nursery orders for care of the infant are routinely put into effect. Had the infant shown any signs of having problems Dr. Miller would have been notified and been expected to take care of them in person or by instructions to the nurses assigned to the nursery. Normally, in such cases, the assigned pediatrician examines the infant within 24 hours, usually on his morning rounds at the hospital.
5. Thursday, June 6, 1974, was Dr. Miller's regular "day off" from his practice.

*77 6. During the year 1974 affiant and Dr. Louis J. Tyler, Jr., a qualified pediatrician practicing in Baton Rouge, Louisiana, extended to each other the professional courtesy of taking the other's calls and seeing the other's patients on their respective "days off". Affiant and Dr. Tyler were not and have never engaged in the practice of pediatrics as partners or associates; nor has one ever employed the other or paid the other. The arrangement between the two doctors was merely a professional courtesy of making themselves available to each other's patients during periods when one or the other was away from his practice. The patients of one were not obligated or required to use the services of the other.
7. Affiant is informed and believes that on Thursday, June 6, 1974, Dr. Tyler, making his regular rounds at the Woman's Hospital, knowing it was Dr. Miller's day off, checked all the infants listed as Dr. Miller's patients in the nursery. The Settoon infant was so listed and was checked by Dr. Tyler and found to be in good condition.
8. On the evening of June 6, 1974, affiant received a call by telephone from the father of the Settoon infant, one of the plaintiff's herein, advising him that he did not want Dr. Miller to treat his child.
9. On the morning of June 7, 1974, when making his rounds at the Woman's Hospital, affiant noted that the hospital chart still listed him as the Settoon baby's pediatrician. He thereupon went to Mrs. Settoon's room, accompanied by a nurse; informed Mrs. Settoon that the child was still listed as being under his care; that under the hospital regulations the child could not be left without a pediatrician; that he would be willing to care for the child until the services of another pediatrician could be obtained. Affiant was told that his services were not desired. Affiant thereupon instructed the nurse to obtain a written release from Mrs. Settoon and left. Affiant received another telephone call from the father, Eric B. Settoon, on the afternoon of June 7, 1974, and was again informed that his services were not desired.
10. Affiant has never examined or even seen the Settoon infant and his only contact with the father and mother of the infant are as related above." (emphasis supplied)
Plaintiffs filed an exception to the motion for summary judgment,[3] attacking the efficacy of Dr. Miller's affidavit, essentially averring that it was necessary that Dr. Miller attach certified evidence to his affidavit showing: 1) he was a duly licensed physician; 2) he was a staff physician for Woman's Hospital; 3) the requirements of Woman's Hospital to be an approved physician; 4) the policy of the hospital as to what doctors treat new infants, and how they are chosen; 5) the qualifications of Dr. Tyler; and 6) the legal relationship between Dr. Miller and Dr. Tyler.
Plaintiffs' attack on the propriety of the affidavit on these grounds are without merit. First, most of the facts stated in Dr. Miller's affidavit which plaintiffs argue require certified evidence, are essentially the same facts that are expressly *78 pleaded by plaintiffs in their petition. For example, plaintiffs' petition specifically alleges that Dr. Miller and Dr. Tyler are duly licensed pediatricians practicing in Baton Rouge and on the staff of Woman's Hospital. Attaching certified evidence corroborating facts already alleged by an opposing party would clearly be a vain and useless thing. Second, LSA-La.C.C.P. Art. 967 does not require certified evidence to prove every statement made by affiant. The only certification required is that of copies of papers referred to in the affidavit and attached to, or served with, the affidavit. Actually it appears that plaintiffs' exceptions are directed to the weight or credibility that the trial judge may give the affidavits.
Plaintiffs' exception alleges that Dr. Miller's affidavit is also deficient in that it contains much inadmissible hearsay. Our law is clear that supporting and opposing affidavits shall only "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." LSA-La.C.C.P. Art. 967.
A close inspection of Dr. Miller's affidavit does reveal some statements that would be considered inadmissible hearsay. However, Dr. Miller's statements that he and Dr. Tyler have never been partners or associates, that he has never employed Dr. Tyler and that he never examined Infant, are certainly not hearsay. These crucial facts are within the ambit of his own personal knowledge. The trial judge, as indicated by his oral reasons filed in the record, did not use any part of the affidavit that could be considered hearsay in reaching his decision.
Our review of the pleadings and supporting and opposing affidavits indicates that there is no genuine issue of material fact and that Dr. Miller is entitled to judgment as a matter of law. Dr. Miller's only connection with this case is that the care of the Infant was routinely assigned to him by the hospital without his previous knowledge. He never examined the Infant and had only one harmless brief contact with Mrs. Settoon.
Dr. Miller cannot be held accountable for any tort allegedly committed by Dr. Tyler under any theory of law. Dr. Miller's affidavit affirmatively shows that the sole connection between the two was that each of them extended to the other the professional courtesy of "covering" for the other on their respective days off. This type of professional relationship commonly exists between members of many professions.
The only evidence plaintiffs attempted to introduce to show that more than a mere professional courtesy was involved between Dr. Miller and Dr. Tyler cannot properly be considered by this court. Plaintiffs attached a pamphlet entitled "Newborn Instructions" to one of their opposing affidavits. This four page pamphlet has both Dr. Miller's and Dr. Tyler's name in its heading and appears to list the same address for both of them. Separate phone numbers are, however, listed for each. The last two sentences of the pamphlet read, "Our office is open on weekdays from 9:00 a.m. until 5:00 p.m. and Saturday until 1:00 p.m. At least one of us is available on weekends and holidays for emergencies."
The court cannot consider the pamphlet because it is not a sworn or certified copy and LSA-La.C.C.P. Art. 967 requires that such copies attached to supporting and opposing affidavits be sworn or certified. However, even if the pamphlet were properly before the court, its contents would not aid the plaintiffs' case. The pamphlet does not raise any genuine issue of material fact. Its contents do not dispel Dr. Miller's statements in the affidavit regarding the relationship between Dr. Tyler and himself. The pamphlet merely indicates that the two doctors may have their office in the same building and that they may *79 have joined in putting the pamphlet together to decrease its production costs and maintain uniformity in instructions given at the hospital, at which they were staff pediatricians.
Plaintiffs could not rely on their petition. LSA-La.C.C.P. Art. 967. It was encumbent upon them to respond to Dr. Miller's motion and affidavit by sufficient affidavit or otherwise so that a material issue of fact was shown. They have failed in this endeavor and Dr. Miller is entitled to judgment as a matter of law.
For the foregoing reasons, the judgment of the trial court is affirmed; all costs to be borne by plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Other facts are contained in Dr. Miller's affidavit supporting the motion for summary judgment, infra.
[2] As can be seen, much of plaintiffs' petition as regards Dr. Miller, consists of legal conclusions. Very few "facts" are alleged.
[3] Plaintiffs argue that the motion for summary judgment and the exception thereto were never called and considered by the lower court and that they and the court were never given an opportunity to review materials subpoenaed from Woman's Hospital which were produced in open court immediately prior to the scheduled hearing on the motion and the exception. The record does not support plaintiffs argument. The minutes in the record reflect that the motion and exception were both considered by the lower court and, in fact, the numerous citations given by the trial judge in his reasons evidence careful consideration of them. Furthermore, the materials from Woman's Hospital were introduced into evidence and a review of them by this court supports the conclusion that the materials are irrelevant and immaterial to the issues at bar.