# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1080


**PATRICIA DAVIS**

**VERSUS**

**FORTIS BENEFITS INS. CO., ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 06-C-1587-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Michael G. Sullivan, Judges.


**AFFIRMED.**


**Jarvis J. Claiborne**
**P. O. Box 1033**
**Opelousas, LA 70571-1033**
**Telephone: (337) 948-4336**
**COUNSEL FOR:**
     **Plaintiff/Appellant - Patricia Davis**

**Scott N. Hensgens**
**Carroll Devillier, Jr.**
**Breazeale, Sachse & Wilson, LLP**
**P. O. Box 3197**
**Baton Rouge, LA 70821-3197**
**Telephone: (225) 387-4000**
**COUNSEL FOR:**
     **Defendant/Appellee - Washington National Life Insurance Company**

**THIBODEAUX, Chief Judge.**

This case involves a claim for dependent life insurance benefits by the plaintiff-appellant, Patricia Davis, against the defendant-appellee, Washington National Insurance Company (Washington National). The trial court granted the defendant's motion for summary judgment on the bases that the decedent was no longer a "dependent" under the policy because of a divorce which preceded the alleged dependent's death and, further, because Washington National had not renewed the policy prior to the alleged dependent's death. Ms. Davis filed this appeal. We affirm the trial court's judgment granting the motion for summary judgment in favor of Washington National.

I.

**ISSUE**

We must decide whether the trial court committed legal error in granting summary judgment in favor of Washington National.

II.

**FACTS AND PROCEDURAL HISTORY**

The plaintiff, Patricia Davis, worked for the St. Landry Parish School Board as a teacher's aide. In 1999, she applied for $40,000.00 of dependent life insurance coverage on her husband, Morris Davis, Jr., under her group policy with the school board. The school board's insurer at that time was Washington National. The policy clearly defined an "eligible dependent" as the spouse of an insured employee or the insured employee's unmarried child of a specified age. On July 30th and August 6th of 2003, Washington National sent letters to the school board notifying it that Washington National was exiting the group benefits business and would not be renewing its group insurance contract with the school board. The

effective date of non-renewal was October 1, 2003. The notifications provided detailed information that Fortis Benefits Insurance Company (Fortis) would pick up the school board's coverage.

In September 2003, before the October 1, 2003 effective date of non-renewal with Washington National, Ms. Davis submitted an application to Fortis, through the assistant superintendent of the school board, for coverage of her life insurance policy on Morris Davis. Accordingly, Ms. Davis' payroll-deducted premiums began going to Fortis. The Fortis policy provided that the eligible dependent must be the "lawful husband" or unmarried child of the insured employee. Dependent coverage as to both insurers respectively, first Washington National and then Fortis, ended when the policy terminated or when a dependent was no longer eligible.

On June 9, 2004, Ms. Davis obtained a final divorce from Morris Davis. Ms. Davis did not provide notification to either insurer of her divorce from Morris Davis, and she continued to have the life insurance premiums deducted from her paychecks by the school board.

Morris Davis subsequently married another woman. He died on November 29, 2004. His death certificate listed his surviving spouse as Jeanette Rideau.

The trial court granted summary judgment to Fortis, the insurer at the time of the divorce and the death of Morris Davis, in December 2006. This appeal concerns Washington National's motion for summary judgment.

III.

## LAW AND DISCUSSION

### Standard of Review

When an appellate court reviews a district court judgment on a motion for summary judgment, it applies the *de novo* standard of review, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law."

*Gray v. Am. Nat. Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844

(quoting *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La.

5/22/07), 958 So.2d 634, 638). "The judgment sought shall be rendered forthwith if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to material fact, and

that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

The burden of proof imposed upon a movant for a motion for summary

judgment are set forth in the Louisiana Code of Civil Procedure:

The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).

3

## Notice of Non-Renewal

Ms. Davis first argued that she never received a notice of non-renewal from Washington National; rather, the notice was sent to the school board. The trial court pointed out that the school board was the insured and found no requirement that employees be individually notified by the insurer of non-renewals such as those herein. Nor do we. More specifically, under La.R.S. 22:636, the cancellation of a policy by an insurer "may be effected as to any interest" by written notice "actually delivered or mailed to the insured *or to his representative in charge of the subject of the insurance* not less than thirty days prior to the effective date of the cancellation." La.R.S.22:636(A)(1)(a) (emphasis added).

In this case, the notice of non-renewal was provided to Ms. Davis' employer, to the attention of a Ms. Fontenot, as a person *in charge of the subject of the insurance*, on July 30, 2003, more than sixty days before the effective date of non-renewal on October 1, 2003. Therefore, the thirty-day notice of La.R.S. 22:636(A)(1)(a) is more than met. Ms. Davis cited no law in support of her position on notice. Likewise, we found no law under the present facts requiring that a notice of non-renewal of a group policy must go directly from the insurer to the individual employees of the insured. Moreover, it is clear that Ms. Davis was timely notified of the non-renewal because she applied for coverage with Fortis on September 10, 2003, before the effective date of Washington National's non-renewal on October 1, 2003.[1]

---

[1]Ms. Davis never acted independently as an insured. Ms. Davis' application to Fortis was transmitted to Fortis with a cover letter from the school board, signed by the school board's assistant superintendent; It listed the school board as the applicant *and* the insured. When Ms. Davis filed a claim for the death benefits with Fortis, she did so through Tara Fontenot, a school board administrator who signed the claim as the authorized policy-holder. When Washington National notified the school board of its non-renewal and provided the name of its successor, the two letters of notification went to the attention of Tara Fontenot.

**Retained Premium Payments**

Ms. Davis next argued that Fortis kept her premium payments and that this conduct is evidence of an implied contract, thereby, proving coverage on the dependent life insurance claim. With no support for her position, she argues that Washington National is liable for the death benefit, even though it was the first insurer and it properly terminated coverage over a year before Morris Davis died and approximately eight months before he became an ineligible dependent due to divorce. We disagree for many reasons. As a threshold matter, at the time of the divorce, and at the time of Morris Davis' death, premiums were being paid to Fortis, not to Washington National; and, Washington National has no affiliation with Fortis as a parent or subsidiary or as a merged or acquired entity.

Further, Ms. Davis withheld the fact of the divorce from Fortis, whose knowledge in any event cannot be imputed to the preceding insurer, Washington National. Ms. Davis had her payroll deduction of the premiums continued of her own volition without interruption. Ms. Davis cannot now say that it was the insurer's duty to specifically notify her that divorce terminated coverage or that she must notify the insurer in case a dependent becomes ineligible. An insured is presumed to know the provisions of her coverage. *See Stephens v. Audubon Ins. Co.*, 27,658 (La.App. 2 Cir. 12/6/95), 665 So.2d 683, *writ denied,* 96-0066 (La. 2/28/96), 668 So.2d 363. In this case, the record reveals that when the insurer, Fortis, called her about the claim, Ms. Davis refused to divulge the information regarding the divorce. Fortis learned the facts on its own via the divorce decree and the death certificate, both of which were filed into the record by both insurers. Accordingly, Ms. Davis' second argument is without merit.

**Affidavits and Attachments**

Finally, Ms. Davis contends that it was error for the trial court to admit into evidence the affidavit of Ioanna Archer Raughton, the claims adjuster for Conseco Services, L.L.C. (Conseco), which is the administrative service for Washington National. Without explanation, Ms. Davis argues that the affidavit was not made on personal knowledge. Ms. Davis further argues that the attachments to the affidavit were not certified, amounted to hearsay, and violated La.Code Civ.P. art. 967.[2] Again, we disagree. The affidavit of Ms. Raughton identifies herself and her position as Claims Adjuster II with Conseco and explains the relationship between Conseco and Washington National. Ms. Raughton further states that she knows the facts surrounding the coverage based upon personal knowledge and that she has reviewed the documents which are in her custody, care, and control. She describes the contents and provisions of each attached letter of notice, insurance application, and insurance policy and states at the bottom of her sworn affidavit that everything contained therein is true and correct to the best of her knowledge, information, and belief. Both the death certificate and the Judgment of Divorce, which were not generated by Washington National, bear stamps certifying that they are true copies.

We have held that an insurance policy attached to the affidavit of an insurer's staff attorney was properly considered in ruling on the insurer's summary judgment motion where, in his affidavit, counsel swore that the attached policy was

---

[2]Louisiana Code of Civil Procedure Article 967 provides in pertinent part as follows:

A. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

a true and correct copy of the one over which litigation arose, notwithstanding that such contract may not have been separately certified or verified. *Tabb v. La. Health Servs. & Indem. Co.*, 352 So.2d 771 (La.App. 3 Cir. 1977), *writ granted,* 354 So.2d 1386 (La.), *rev'd on other grounds*, 361 So.2d 862 (La.1978).

In *Settoon v. St. Paul Fire & Marine Insurance Co.*, 331 So.2d 73 (La.App. 1 Cir. 1976), the first circuit held that the only certification required, with regard to an affidavit in support of a motion for summary judgment, is that copies of the papers referred to in the affidavit be attached to, or served with, the affidavit. The *Settoon* court found that Article 967 does not require certified evidence to prove every statement made by an affiant in support of a motion for summary judgment. *See also*, *Yarbrough v. Fed. Land Bank Ass'n of Jackson*, 616 So.2d 1327(La.App. 2 Cir. 1993). *And see*, *Broadbridge v. Perez*, 565 So.2d 1090 (La.App. 4 Cir. 1990) (although DOTD documents did not have a certified or true copy stamp on them as did the accident report, the letter of the operations specialist for the district in which the accident occurred stated that the documents were copies of official DOTD records; this was found to be certification, or the equivalent of certification).

The only evidence offered by Ms. Davis to oppose the insurer's motion for summary judgment was her own one-page affidavit with no attachments. Ms. Davis' affidavit contained a list of the unsupported arguments discussed above, regarding notice and acceptance of payments, and her unjustified beliefs that she should have been specifically notified that coverage would terminate upon divorce and that it was her obligation to notify the insurer of same.

Louisiana Code of Civil Procedure Article 967(B) provides in pertinent part as follows:

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest

on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

Accordingly, once both parties have completed their pleadings, depositions, and attachments, summary judgment will be granted only if the issues of fact presented "are so patently insubstantial as to present no genuine issues" of material fact; a mere allegation without substance will not preclude the rendering of summary judgment. *City of Baton Rouge v. Cannon*, 376 So.2d 994, 996 (La.App. 1 Cir. 1979) (quoting *Metropolitan Bank of Jefferson v. Summers*, 257 So.2d 179, 181 (La.App. 4 Cir.), *writ refused*, 261 La. 462, 259 So.2d 914 (1972)).

According to our review of the facts and law in this case, the affidavits and attachments of Washington National demonstrate that divorce terminated the eligibility of Morris Davis as a dependent under the policy, that Fortis was the insurer at the pertinent times, not Washington National, and that notice was timely given to the school board, who gave notice to the employees. Ms. Davis has not provided any law or evidentiary support for the naked allegations in her affidavit, all of which are negated by the evidence in the record. We, therefore, conclude that Ms. Davis has failed to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial. Accordingly, there is no genuine issue of material fact to preclude summary judgment in favor of Washington National.

IV.

**CONCLUSION**

Based upon the foregoing, the Judgment of the trial court is affirmed. Costs of this appeal are assessed against Patricia Davis.

**AFFIRMED.**